## J. MANTEL v. THE STATE.

### No. 4546.     Decided March 10, 1909.

**1.—City Ordinance—Pure Food Law—Conflict Between City Ordinance and State Laws.**

Where a city ordinance was so sweeping in its provisions as to cover all the provisions of the State law with reference to pure food, without drawing any distinction as to the character of food which may be adulterated or the manner of adulteration insofar as the punishment is concerned, the same is invalid, in that the punishment for violation of the city ordinance is different from that prescribed for violation of the State law.

**2.—Same—City Charter and Ordinance.**

Where the special charter of a city contained an inhibition against the city to enact ordinances with penalties other than those prescribed by the State for a like offense, an ordinance under this charter which prescribed different penalties than those in the State pure food law was invalid.

**3.—Same—Rule of Construction—Municipal Corporations.**

Municipal corporations have only such power as may be granted by the Legislature, unless otherwise provided in the Constitution, and wherever the question of the grant of power is at issue the grant will be taken more strongly in favor of the granting power, and against the grantee, when application of this principle is made to municipal corporations.

**4.—Same—Ordinance—State Law—Adulterated Milk.**

The pure food law of the State of Texas with reference to the sale of adulterated milk is enforceable, and there is no conflict in the penalties prescribed by the State law; besides the Act of the Legislature can not be held invalid because the city ordinance may be out of harmony with it, and where a conflict arises between the Act of the Legislature and the city ordinance the latter must give way and be held invalid.

Appeal from the County Court of Dallas County at Law.     Tried below before the Hon. W. M. Holland.

Appeal from a conviction of selling adulterated milk under a city ordinance; penalty, a fine of $100.

The opinion states the case.

*Barry Miller,* for appellant.—Cited cases in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for violating an ordinance of the city of Dallas prescribing a punishment for the exposure for sale and prohibiting the sale of unwholesome and adulterated food.

The complaint charges the adulteration of milk. The ordinance is very general, and reads as follows: "That no person, or persons, firm or corporation within the city of Dallas shall manufacture, offer or expose for sale or exchange or sell any article of food or drink which is adulterated or misbranded under the meaning of this act." The punishment prescribed is not less than twenty-five nor more than two hundred dollars. The State law prescribes different punishments for different violations of what is known as the Pure Food Law, some of which require punishment in the county jail and some reaching a maximum punishment of five hundred dollars. The State law is so framed that the punishments prescribed in it are of different grades owing to the character of the foods adulterated. The city ordinance seems to be sweeping enough to cover all the provisions of the State law without drawing any distinction as to the character of foods which may be adulterated or the manner of adulteration, insofar as punishment is concerned. It will be observed then that the punishment under the city ordinance will apply alike to any or all violations of city ordinance where food or drink has been adulterated. This ordinance seems to undertake to cover in a few lines the various offenses denounced by the statute and inflict the same punishment for a violation of each or all without reference to the punishment prescribed by the State law, and without reference to the definitions given in the statutory pure food law. For this reason we are of opinion that the ordinance is invalid in that the punishment for violation of the city ordinance is different from that prescribed for violation of the State law. It is expressly stated in the charter granted the city of Dallas, as evidenced by the language of section 3, subdivision 37, that "The city shall have power to enforce the by-laws and ordinances for the city by fine not to exceed two hundred dollars provided that no ordinance or by-law shall provide a lesser penalty than is prescribed for a like offense by the laws of the State." Therefore, as this provision of the charter reads, compared with the ordinance, it will be seen that the ordinance is within the interdiction contained in the charter and in article 931, Code Criminal Procedure, which provides: " . . . that no ordinance of a city or town shall be valid which provides a less penalty for any act, omission or offense than is prescribed by the statutes, where such act or omission is an offense against the State." So here we have another direct inhibition by the Legislature against a city or town providing ordinances with penalties other than those prescribed by the State for a like offense. Municipal corporations have only such powers as may be granted by the Legislature, unless otherwise provided in the Constitution, and wherever the question of a grant of power is at issue, the grant will be taken

more strongly in favor of the granting power and against the grantee when application of this principle is made to municipal corporations. This provision of the Code of Criminal Procedure has received construction in many cases and is of uniform ruling.   These cases all hold that where the ordinance is in conflict with the statute it is invalid in regard to punishment under such conditions as are stated in this record.   McLain v. State, 31 Texas Crim. Rep., 558; Ex parte Sundstrom, 25 Texas Crim. App., 133; Bohmy v. State, 21 Texas Crim. App., 597; Flood v. State, 19 Texas Crim. App., 584; Angenhoffer v. State, 15 Texas Crim. App., 613; Lynn v. State, 33 Texas Crim. Rep., 153; Ex parte Ogden, 43 Texas Crim. Rep., 531; Ex parte Fagg, 38 Texas Crim. Rep., 573; Ex parte Cross, 44 Texas Crim. Rep., 376; Clark v. State, 46 Texas Crim. Rep., 566; Ex parte McHenry, 19 Texas Crim. App., 233; Ex parte Boland, 11 Texas Crim. App., 159; Ex parte Slaron, 3 Texas Crim. App., 662; Ex parte Coombs, 38 Texas Crim. Rep., 648; McNeil v. State, 29 Texas Crim. App., 48; Ex parte Gregory, 1 Texas Crim. App., 753; Arroyo v. State, 69 S. W. Rep., 503.   We deem it unnecessary to cite further authorities.

It is urged, however, by the city, when properly construed, there is no conflict between the act of the Legislature and the ordinance of the city of Dallas, and it is further insisted that the provisions of the State law relating to the sale of milk are unenforceable on account of the different penalties prescribed in that act for the same offense. We are of opinion these contentions are not valid.   The sections referred to by counsel representing the city of Dallas are 37 and 43. Section 37 provides that, whoever shall adulterate by himself, or by his servant or agent, or sell, exchange or deliver or have in his custody or possession with intent to sell or exchange the same, or expose or offer for sale adulterated milk, or milk to which water or any foreign substance or substances in any state of fermentation or putrefaction, or from sick or diseased cows, shall be guilty of a misdemeanor, and shall, for every offense, be punished by a fine not exceeding $100, or by imprisonment in the county jail not exceeding three months.   Section 43 provides as follows: "Any person who shall remove the cream or any part thereof from milk, to be sold as pure milk, to any factory in which milk is used as a material in the process of production, and any person who shall, in any manner, adulterate such milk, either by addition of water or otherwise, shall be guilty of a misdemeanor, and shall for every such offense be punished by a fine not exceeding $100, or by imprisonment in the county jail not exceeding ninety days." We are of opinion that there is no merit in the contention that these laws are in conflict when properly construed; and we are further of opinion that these provisions of the pure food law relating to the sale of milk are enforceable, and that the Legislature had authority to make the penalties different.

While technically speaking, there may be a slight difference between

the expression "three months" in section 37 and "ninety days" in section 43, but under the view we take of it, it would make no difference if there were entirely different punishments.     Under section 37 the party is punished for adulterating either by himself or through his agents or employes or of selling, exchanging or delivering or having in his custody with intent to sell, exchange, etc., adulterated milk or milk to which water or any foreign substance or substances in any state of fermentation or putrefaction, or from sick or diseased cows; while in section 43 the person punished is he who shall remove the cream or any part thereof from milk, to be sold as pure milk, to any factory in which milk is used as a material in the process of production, and any person who shall in any manner adulterate such milk either by addition of water or otherwise.     These are different matters, different definitions, and refer to different conditions, which the Legislature had a right to designate and provide.     The object of the two sections are different and the purposes are not the same.

Nor do we believe nor are we of opinion that this court is called upon to hold, nor would we be justified in litigations of this character to hold invalid the acts of the Legislature because a city ordinance may be out of harmony with such legislation.     Nor would we be justified under such circumstances in holding invalid the statutes passed by the Legislature in order to uphold the city ordinance where there is a conflict.     If there is a conflict between the acts of the Legislature and the city ordinance, the city ordinance must give way and be held invalid, if it be necessary to hold either invalid.     The city ordinances are justified by virtue of the authority granted in the charter.     This charter is derived from the Legislature, and the power of the city government to create or ordain ordinances is by virtue of authority granted by the Legislature.     As before stated, municipal corporations have only such power as may be granted by the Legislature unless otherwise ordained in the Constitution, and whenever there is a question of the grant of this power, it will be taken more strongly in favor of the granting power and against the grantee or municipal corporation, and it will not be nor would it be maintainable as a sound proposition to hold that, where there is a conflict between the act of the Legislature and the city ordinance, that the act of the Legislature must be held invalid.     It does not need to be added that it is well within the power of the city of Dallas, by ordinance duly passed, to adopt such ordinances as may be appropriate to protect the public health, subject always that they be in conformity with the State law on the same subject.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*