### Ex Parte J. Brewer.

No. 2110. Decided January 15, 1913.

**1.—City Charter and Ordinance—Pool Hall—Police Power.**

Where the Legislature granted a special charter to the City of Dallas with authority to regulate billiard and pool halls within its limits, and gave to said city all power to enact police regulations in regard thereto such as the Legislature itself possessed, held under the authority thus granted said city was authorized to enact and enforce an ordinance closing pool halls from twelve o'clock at night until five o'clock next morning; the same not being in conflict with any state law. Davidson, Presiding Judge, dissenting.

**2.—Same—Rule Stated—State Law.**

Where the city ordinance does not deal with an offense already made penal by the law of the State, the same is not invalid on the ground that it conflicts therewith. Distinguishing Ex Parte Axsom, 63 Texas Crim. Rep., 627.

**3.—Same—Police Power—State Law—City Ordinance.**

There is no inhibition in the Constitution or laws of this State which will prevent a city under special charter from dealing with a matter with which the State laws do not deal, where the police power is conferred upon such city.

**4.—Same—Case Stated—Limiting Hours—Pool Hall—Reasonable Regulation.**

The State laws having fixed no hours of closing of pool halls, it being a subject of regulation, such hours may be regulated by the city within reasonable limits under a charater conferring police powers, such regulation being reasonable and not impairing the license under State law. Davidson, Presiding Judge, dissenting.

**5.—Same—Judicial Notice.**

Where the Act of the Legislature granting the City of Dallas authority to regulate billiard and pool halls within its limits by special charter, etc., required that this court shall take judicial notice thereof, this Court will act accordingly.

From Dallas County.

Original habeas corpus asking release from arrest under a violation of the city ordinance of the City of Dallas with reference to closing pool halls.

The opinion states the case.

*Walker & Williams* and *Horace Williams,* for relator.—On question of invalidity of city ordinance; Ex Parte Axsom v. 63 Texas Crim. Rep., 627; Ex Parte Farley, 65 Tex. Crim. Rep., 405; 144 S. W. Rep., 530.

*C. E. Lane,* Assistant Attorney-General, for the State.

*James J. Collins* and *Lee Richardson,* for respondent.—On question of validity of ordinance: City of Tarkio v. Cook, 25 S. W. Rep., 202; Goytino v. McAlier, 4 Cal. App., 655; Burlingame v. Thompson, 74 Kan., 393; Garonzik v. State, 50 Tex. Crim. Rep., 533, 100 S. W. Rep., 374; Williams v. State, 52 Tex. Crim. Rep., 371, 107 S. W. Rep., 1121; Ex Parte King, 52 Tex. Crim. Rep., 383, 107 S. W. Rep., 549.

On question that occupation license does not prevent city from enforcing police power: Newson v. Galveston, 76 Texas, 559.

HARPER, Judge.—In the opinion of our Presiding Judge will be found a full statement of the issues involved. We thoroughly concur in that portion of his opinion in which he holds that the ordinance, if in conflict with any law of the State, is invalid, and we also concur with him in the holding that it is the settled law of this State that an ordinance is invalid which provides a greater or less penalty than the State law for the *same offense,* although on this latter proposition some eminent authorities assert to the contrary, but as stated by him, it has become the settled law of this State that the penalty for the

violation of a city ordinance must be the same where it deals with the same offense made penal by the laws of the State. As the penalty affixed by this ordinance is not the same as that affixed by any State law, regulating pool rooms and billiard halls, it will not be necessary to discuss that feature of the case, but only to decide whether this ordinance deals with an offense already made penal by the laws of the State.

In the opinion of the Presiding Judge he states that as the court held, in Ex Parte Axsom, 63 Tex. Crim. Rep., 627, 141 S. W. Rep., 793, that the keeper of a pool room was a laborer, under Article 299 of the Penal Code, this would render this ordinance void, as the penalty affixed to the ordinance is different from that fixed by State law for violation of Article 299. In the Ex Parte Axsom case the relator testified: ''I keep a pool hall in the City of Brownsville. I was so engaged on Sunday, the 27th day of February; I was at my place of business on said day managing and operating my pool room. I dusted off the billiard tables and did such other work as I am accustomed to do. A number of people played pool and billiards at my place of business on that day.'' The court, we think, correctly held that under this testimony he was a laborer within the meaning of the Code. But in this case the ordinance does not seek to make these acts an offense. The ordinance deals with a different matter altogether. It requires that all persons shall keep their public pool halls or billiard halls, or a combination of both, closed from twelve o'clock at midnight until five a. m. of each week day and from 12 o'clock Saturday night until 5 o'clock a. m. of the following Monday of each week. It will be seen that this ordinance deals with the person owning or in control of a pool hall and requires him to keep his place of business closed during the hours named, and while it embraces from 12 o'clock Saturday night until five a. m. Monday morning (which includes Sunday), it also deals with all other days of the week and requires the pool hall to be kept closed from 12 o'clock at night until 5 a. m. next morning.

In the Axsom case we were dealing with the man who said he was present, running the pool hall, dusting the tables and doing all the work necessary and usual to be done in running the pool hall on Sunday, and this was the offense denounced by Article 299. The offense defined by this ordinance is keeping the doors closed during certain hours during every day of the week. They are not the same offense, and therefore the penalties need not be the same. We have no State law, fixing the closing hours of pool room and billiard halls,—the laws of the State do not deal with this matter. The laws of the State do fix the hours for closing of saloons, and they are fixed at from ''twelve o'clock midnight until five o'clock a. m. of each week day, and from twelve o'clock midnight Saturday night until five o'clock a. m. of the following Monday (Art. 615 P. C.). This has been held to be a reasonable regulation, and no one has contended that it is in conflict with Article 299 or any other article of the Code, and if this

provision of the law in regard to retail liquor dealers' is not in conflict with the other articles of the Code, we can not appreciate the reasoning that would render the same law as regards pool rooms and billiard halls in conflict with other articles of the Code. In passing the ordinance, the City of Dallas copied almost the exact language of the Code in fixing the closing hours of saloons, and applied it to billiard halls and pool rooms, and it did fix the same hours.

The Legislature in fixing the hours of closing of saloons made that a separate and distinct offense,—to permit the place to be open. In the same article they also make it an offense to sell, and if a saloon-keeper permits his place to be open during the prohibited hours and sells, he is guilty of two distinct offenses and may be prosecuted and convicted of each. So in this case, if a man, a keeper of a pool hall, permits his place of business to be open during the prohibited hours, he may be prosecuted and convicted of that offense under the city ordinance; and if these hours should be on the Sabbath, the man who "manages and operates the pool hall, dusts off the tables, and such other work as is customary and necessary" in such work may also be prosecuted and convicted for laboring on the Sabbath,—the laws of the State and city having made it two offenses. There is no inhibition in the Constitution or laws of this State, which will prevent the city from dealing with a matter with which the State laws do not deal where the police power is conferred upon the city, and the State, in its laws, having fixed no hours of closing for pool halls, it being a subject of regulation, such hours may be regulated by the city within reasonable limits. Of course, as the State licenses pool, and billiard halls, if a city should seek, by this means, to prohibit them entirely, such ordinances would be invalid. The regulations must be reasonable, and not unnecessarily impair the right given by the State under the license issued. Are the hours fixed, in which pool halls must remain closed, unreasonable? Experience has shown that during the hours between midnight and daylight were the hours in which the lawless element, to a great extent, would gather in and around saloons and breed crime, consequently the Legislature, in the exercise of the police power, closed the saloons during those hours. Since the saloons have closed, these elements have gathered around pool and billiard halls in the cities, and the same reasoning, perhaps, which caused the Legislature to close the saloons during these hours, would move the legislative bodies of the cities and towns to close the pool and billiard halls during the same hours. As held by this court in Ex Parte Patterson, 42 Texas Crim. Rep., 256, such regulations must be reasonable, but when reasonable, and not prohibitory, or too restrictive, cities are authorized to adopt such regulations. In that case it is said, "that not only the State itself, but counties and cities" are authorized to raise revenue thereform, but this did not deprive the cities of the power to regulate them, within reasonable bounds. The question of the right of a city to adopt reasonable regulations in

regard to all matter subject to the police power has been so frequently before this court and so exhaustively discussed we do not deem it necessary to do so here, but merely cite some of the decisions, wherein it is expressly held that a right of the city authorities to adopt such regulations, so long as they are reasonable, are upheld, and wherein it is held, that if such ordinances do not amount to virtual prohibition, they are not in conflict with the laws of the State licensing such occupation. Garonzik v. The State, 50 Texas Crim. Rep., 533; Levine v. The State, 46 Texas Crim. Rep., 364; Williams v. The State, 52 Texas Crim. Rep., 371; Ex Parte Abrams v. The State, 56 Texas Crim. Rep., 465; Ex Parte King, 52 Texas Crim. Rep., 383. Our Court of Civil Appeals in the case of Cohen v. Rice, 101 S. W. Rep., 1052, also upheld a similar law, and held that reasonable regulation of a business of this character was not in violation of the law levying occupation taxes, and that the Legislature had the authority to confer this power upon city governments. In this case a writ of error was refused by our Supreme Court, so that it may be said that all our civil courts and this court are agreed on the authority of the Legislature to confer the police power upon the city governments, and so long as they exercise that power in a reasonable manner, the ordinances will not be held invalid as being in conflict with the occupation tax laws or any other laws. In all the cases cited will be found numerous authorities quoted, and we deem it unnecessary to cite them here. Our Presiding Judge, who dissents in this case, has dissented from the opinions heretofore rendered on these questions as will be found by referring to those herein cited, but his views on these questions are contrary to the views held by our Supreme Court, the Court of Civil Appeals, and all the other members of this Court, and we think, are against the great weight of authority. Mr. Dillon, who is recognized as an author of ability, learned in the law, in his work on Municipal Corporations, says:

"Many of the powers exercised by municipalities fall within what is known as the *police power* of the State, and are delegated to them to be exercised for the public good. Of this nature is the authority to suppress nuisances, preserve health, prevent fires, to regulate the use and storing of dangerous articles, to establish and control markets, and the like. These and other similar topics will be considered in appropriate places. But it may here be observed that every citizen holds his property subject to the proper exercise of this power, either by the State legislature directly, or by public or municipal corporations to which the legislature may delegate it. Laws and ordinances relating to the comfort, health, convenience, good order, and general welfare of the inhabitants are comprehensively styled 'Police Laws or Regulations.' It is well settled that laws and regulations of this character, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbances. They do not appropriate *private property for*

public use, but simply regulate its use and enjoyment by the owner. If he suffers injury, it is either *damnum absque injuria,* or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure. The citizen owns his property absolutely, it is true; it cannot be taken from him for any private use whatever, without his consent, nor can it be taken for any public use without compensation; still he owns it subject to this restriction, namely, that it must be so used as not unreasonably to injure others, and that the sovereign authority may, by police regulations, so direct the use of it that it shall not prove pernicious to his neighbors, or the citizens generally. These regulations rest upon the maxim, *Salus populi suprama est lex.* This power to restrain a private injurious use of property, is essentially different from the right of eminent domain. It is not a taking of private property for public use, but a salutary restraint on a noxious use by the owner, contrary to the maxim, *Sic utere tuo ut alienum non laedas.*'' Sec. 301, p. 553, Vol. 1, Dillon on Municipal Corporations. And in Sec. 731 he says, establishments where billiards and pool tables are kept are proper and appropriate subjects for regulation in the exercise of the police power under delegated authority to a municipal corporation. Again, in Sec. 672, Mr. Dillon says: 'Under a general power granted to a city, its council may, by ordinance, prohibit saloons, restaurants, etc., and other places of public entertainment to be *kept open after ten o'clock at night.* The contention that such ordinance was unreasonable and deprived a citizen of his constitutional rights, was not considered well taken. Under these sections will be found cited many authorities, and by reference to them it will be seen that this is not only the rule in this State, but is the law in almost every State in the Union.

There can be no doubt that the Legislature, in granting a special charter to the City of Dallas (Acts of 1907 as amended by Act of 1909,—see special laws passed by the 30th and 31st Legislatures) granted to it authority to regulate billiard and pool halls within its limits, and gave to said city all power to enact police regulations in regard thereto, which the Legislature itself possessed, and under the authority thus granted, the City of Dallas was authorized to enact and enforce the ordinance closing pool halls from 12 o'clock at night until 5 o'clock next morning. The Act further requires that we shall take judicial notice of all the powers conferred, and in the charter will be found ample authority for the city to enact the ordinance, and as it is not in conflict with any State law, the relator is remanded.

*Relator remanded to custody.*

PRENDERGAST, Judge.—I concur.

DAVIDSON, Presiding Judge (dissenting).—The writer wrote an opinion in this case from which my brethren disagreed and have writ-

ten their views taking issue with what I had written. and inasmuch as they have referred to the opinion that I wrote, I deem it necessary that I should restate my views after reading what they have written, and inasmuch as they refer to what will be my dissenting opinion as a full and correct statement of the issues involved I will again state in this dissent that, applicant was charged with violating the city ordinance of the City of Dallas by keeping open and running a pool hall between 12 o'clock at night and 5 o'clock the next morning, and where an intervening Sunday occurs the ordinance prohibits him from running his pool hall from 12 o'clock .midnight Saturday until 5 o'clock in the morning on the following Monday, the punishment being fixed by the ordinance in any sum not to exceed one hundred dollars.

Contention is made by the applicant that this law is void for various reasons, (1) that it is in conflict with the State law on the same subject, and that the Legislature was without power to delegate its authority to the City of Dallas to alter, amend or suspend a State law; (2) that the ordinance is void for the reason that it is an illegal attempt on the part of the City of Dallas to suspend or change Article 299 of the Revised Penal Code, which was numbered in White's Penal Code 196; (3) that the punishment under the city ordinance is different from that prescribed by the State law under said Article 299.

My brethren state as follows: "In the opinion of our presiding judge will be found a full statement of the issues involved. We thoroughly concur in that portion of his opinion in which he holds that the ordinance, if in conflict with any law of the State, is invalid, and we also concur with him in the holding that it is the settled law of this State that an ordinance is invalid which provides a greater or less penalty than the State law for the same offense, although on this latter proposition some eminent authorities assert to the contrary, but as stated by him, it has become the settled law of this State that the penalty for the violation of a city ordinance must be the same where it deals with the same offense made penal by the laws of the State. As the penalty affixed by this ordinance is not the same as that affixed by any State law, regulating pool rooms and billiard halls, it will not be necessary to discuss that feature of the case, but only to decide whether this ordinance deals with an offense already made penal by the laws of the State. In the opinion of the presiding judge he states that as the court held, in Ex Parte Axsom, 63 Tex. Crim. Rep., 627, 141 S. W. Rep., 793, that the keeper of a pool room was a laborer under article 299 of the Penal Code, this would render this ordinance void, as the penalty affixed to the ordinance is different from that fixed by State laws for violation of Article 299. In the Ex Parte Axsom case the relator testified: 'I keep a pool hall in the City of Brownsville. I was so engaged on Sunday, the 27th day of February; I was at my place of business on said day managing and operating my pool room. I dusted off the billiard tables and did such other work as I am accustomed to do. A number of people played pool

and billiard at my place of business on that day.' The court, we think, correctly held that under this testimony he was a laborer within the meaning of the Code. But in this case the ordinance does not seek to make these acts an offense. The ordinance deals with a different matter altogether.''

This is a quotation from the opinion of my brethren in this case. They, in my judgment, have not stated the Axsom case in their opinion as it was stated in the opinion delivered in the case, Judge Harper being the author of that as well as of the opinion in this case. Quoting from the Axsom case, after stating the evidence, this language is found: ''The evidence thus appears undisputed that relator opened and run his pool table on the Sabbath, and the sole question to be decided is, do the statutes of this State prohibit the running of a pool room on Sunday? Article 196 of the Penal Code provides: 'Any person who shall labor on Sunday shall be fined not less than ten nor more than fifty dollars,' and article 197 exempts from the provisions of the preceding articles ferrymen, keepers of tool bridges, keepers of hotels, boarding-houses, restaurants, and keepers of livery stables, etc., evidently showing that the Legislature intended that the word 'labor' should be given its broadest signification, and this court, in the case of ex parte Kennedy, 42 Texas Crim. Rep., 148, holds that 'the ordinary vocation of a barber comes within the statute prohibiting all persons from laboring on Sunday.' '' So the Axsom case states clearly the point at issue, which is here repeated: ''the sole question to be decided is, do the statutes of this State prohibit the running of a pool room on Sunday?'' The majority held that it did, and from that opinion I dissented and wrote some views in consonance with what I understood then and understand yet to be the non-debatable law of Texas. So the issue was sharply drawn in the Axsom case, that is, was it a violation of the Sunday law to open and run a pool room on Sunday. In order to reach their conclusion my brethren held that opening and running a pool room on Sunday was ''labor.'' In this opinion it is stated or intimated that this was done because Axsom dusted off his pool tables. That was not the issue stated in the Axsom case. The issue was whether or not running a pool table was a violation of the Sunday law. They held that it was, because running a pool room on Sunday was ''labor.'' The mere fact that with a dust brush he removed a little dust from the tables was not the turning point nor the issue in that case, for if it was, then if he had not dusted the billiard or pool tables there could have been no violation of the Sunday law. As my brethren now state in the Axsom case he was held guilty, not of running his pool hall on Sunday, but for dusting or brushing the dust off of the pool tables. In this case there is nothing said as to whether or not the party dusted his billiard or pool tables, but it would hardly be contended that anybody keeping a billiard or pool tables, whether it was on Sunday or any other time, would fail to keep them clean.

In ex parte Farley, 65 Tex. Crim. Rep., 405, 144 S. W. Rep., 530, this court held, Judge Prendergast being absent, an ordinance almost exactly like the one here, and so far as its spirit, meaning and purpose is concerned, identical with it, to be illegal and void. In that case it was stated that cities and towns have no power except such as is granted by the Legislature, unless set out in the Constitution, and wherever there is doubt of the authority of municipal corporations, that doubt is resolved most strongly in favor of the State and against the municipal corporation, citing Flood v. State, 19 Texas Crim. App. 587, and Ex parte Ginnochio, 30 Texas Crim. App. 584. I repeat here that it would be unnecessary I think to cite authorities to sustain that proposition. Wherever the question is at issue as to grant of power by the Legislature to municipal corporation, that doubt is resolved in favor of the State and against the corporation. It seems to be the universal rule under such circumstances that the question of doubt on this line is always resolved in favor of the grantor and against the grantee. It is also held in the Farley case that wherever an ordinance is in conflict with the State law upon the same subject, the ordinance is illegal and void. This is not debatable, and my brethren concede that such is the law. It is also stated in all the cases that wherever the statute denounces an offense and fixes the punishment for its violation, the city cannot pass an ordinance punishing the same offense if the punishment imposed by the ordinance is in contravention of or in any way different from that fixed by the State law. See Flood v. State, 19 Texas Crim. App. 587; Mantel v. State, 55 Texas Crim. Rep. 458; Angerhoffer v. State, 15 Texas Crim. App. 613; McLean v. State, 31 Texas Crim. Rep., 558; Lynn v. State, 33 Texas Crim. Rep. 159; Bohmy v. State, 21 Texas Crim. App. 597; Arroyo v. State, 69, S. W. Rep. 503; Fay v. State, 44 Texas Crim. Rep. 381; Sunstrom v. State, 25 Texas Crim. App. 158; Ex parte Slaren v. State, 3 Texas Crim. App. 662; Gregory v. State, 1 Texas Crim. App. 753; McHenry v. State, 103 S. W. Rep. 390; Ex parte Cross v. State, 44 Texas Crim. Rep. 376; Clark v. State, 46 Texas Crim. Rep. 566; Ex parte Bell v. State, 32 Texas Crim. Rep. 310; Ex parte King v. State, 52 Texas Crim. Rep. 386; Ex parte Terrell v. State, 40 Texas Crim. Rep., 28; State v. Loury, 20 S. W. Rep. 89; Hoefling v. City, 20 S. W. Rep. 85; Ex parte Farley 65 Tex. Crim. Rep. 405, 144 S. W. Rep. 530.

Another proposition decided in Ex parte Farley and other cited cases is, if the occupation or business under the State law operates or can operate or be carried on without limitation with reference to the twenty-four hours of the day, then the ordinance cannot limit the time to any other period of hours. If the business is authorized under the State law to run the entire twenty-four hours, an ordinance which authorizes the business to be carried on for a fewer hours or restricts or inhibits less than twenty-four hours, would be invalid. This question was pointedly decided in the Arroyo case, 69

S. W. Rep., 503. See Fay v. State, 44 Texas Crim. Rep., 381, as well as numerous other cases. In the Arroyo case the City of Dallas passed an ordinance authorizing the opening of saloons on Sunday for the purpose of selling liquor until 9 o'clock in the morning and after 4 o'clock in the evening. As the State law prohibited the sale of liquor on Sunday it was held that Sunday covered the entire twenty-four hours, and the ordinance was held invalid, yet the terms of the city charter of Dallas undertook to confer authority upon the city to pass such an ordinance limiting the hours. The Fay case arose in Galveston involving the same question. That was decided on the conflict between the statute and the ordinance, and both of them arose under the Sunday laws as did the Flood case, supra; see Sundstrom v. State, 25 Texas Crim. App., 158. The Ex parte Farley case arose also under the Sunday law, and presented the *identical question* here under discussion. I believe I am safe in making the statement that no authority can be found in Texas sustaining the proposition that the city can authorize the sale of intoxicants in the city limits at hours where the statute has prohibited it. Nor do I believe an authority can be found that will sustain the proposition that where the State law has defined an offense and fixed a punishment, that the Legislature can authorize the city to give it a different definition or fix a different penalty. I can state with equal certainty, that wherever the Legislature has levied an occupation tax, the city is limited in its authority to levy only one-half as much as the State levies, and no law will be held valid in Texas that would authorize a city to levy more than one-half as much as that levied by the State in such cases. The cases I have cited are directly in point, and the Farley case covers the *identical question* here involved, the same character of ordinance being brought in review. But the *principle is the same, whether it is running a saloon or a pool hall.*

My brethren cite a lot of cases in support of the proposition they thus state: "The question of the right of a city to adopt reasonable regulation in regard to all matters subject to the police power has been so frequently before this court and so exhaustively discussed we do not deem it necessary to do so here, but merely cite some of the decisions, wherein it is expressly held that a right of the city authorities to adopt such regulations, so long as they are reasonable, are upheld, and wherein it is held, that if such ordinances do not amount to virtual prohibition, they are not in conflict with the laws of the State licensing such occupation," citing Garonzik v. State, 50 Texas Crim. Rep., 533; Levine v. State, 46 Texas Crim. Rep., 364; Williams v. State, 52 Texas Crim. Rep., 371; Ex parte Abrams, 56 Texas Crim. Rep., 465; Ex parte King, 52 Texas Crim. Rep., 383; Cohen v. Rice, 101 S. W. Rep., 1052. They wind up with this statement: "Our Presiding Judge, who dissents in this case, has dissented from the opinions heretofore rendered on these questions as will be found by referring to those herein cited, but his views on these questions are

contrary to the views held by our Supreme Court, the Court of Civil Appeals, and all the other members of this court, and we think, are against the great weight of authority.'' I confess a little surprise at this statement of my brethren. On the issues in the Garonzik case I did not dissent. In the Levine case I disagreed on the question of the authority of the Legislature to authorize the Governor to appoint city officers not on the authority of fixing saloon limits. See my dissent and Ex parte Anderson, 46 Tex. Cr., 372. That has nothing to do with this question. In the Levine case and other cases holding that the Legislature had authority to authorize the city to create saloon limits I did agree and no dissent will be found from me on that proposition. In Williams v. State, supra, I did not dissent. In the Abrams case I did dissent, but I may be wrong in my construction of that case even at this late date, but I believe I was right then and still believe I was right, but the case is erroneously here cited by my brethren. In Ex parte King, supra, I did not dissent. In Cohen v. Rice, supra, of course, I did not dissent. I was not a member of the court which rendered the decision, but had I been I should not have dissented because the question decided there by the court was what has been recognized by this court and all of its members as the law so far as I am aware since the question has arisen, that is, the Legislature has the right to authorize cities and towns to circumscribe the limits in which the saloon may exist or where intoxicants may be sold inside the corporate limits. My brethren have not been fortunate in the selection of their cases, or in their statement of my relation to the cases they cite. Since the question first came before this court, that the Legislature had authority to restrict saloon limits in incorporated towns and cities, I have never dissented from the maintenance of the propostion. It was not a prohibition but a regulation. In the Levine case, 46 Texas Crim. Rep., 364, it was held that it was competent for the Legislature to prescribe in a charter for saloon limits in incorporated towns and cities. This was approved in Ex parte Abrams, supra, Garonzik v. State, 50 Texas Crim. Rep. 533; Ex parte King, 52 Texas Crim. Rep., 383; Williams v. State, 52 Texas Crim. Rep., 371. I do not purpose to take the time here to review the Levine and Abrams cases and the point of difference between the majority and myself in those cases. The ordinance in question here makes two differences, marked and distinct, between the State law and the city ordinance: The first is it requires the closing of the pool hall from 12 o'clock at night until 5 o'clock the next morning, and, second, it closes pool halls from 12 o'clock Saturday night until 5 o'clock the following Monday morning. The State law against keeping open on Sunday, if it be a violation of the Sunday law, wherever it defines a violation of the Sunday law, closes these places from midnight Saturday night until midnight Sunday night. It thereby covers twenty-four hours entirely. This has been expressly decided in a great number of cases in Texas, and I cite the Arroyo cases, supra, where

the matter was pointedly adjudicated, as well as all the cases on the question wherever there is a difference between the city ordinance and the State law on that subject. In fact, it has been so often decided in Texas that it may be regarded until this opinion as being axiomatic and non-debatable. The issue that keeping open pool halls on Sunday was a violation of the Sunday law, was expressly decided in the Axsom case, supra, and that was the only question stated and the only question decided. The question here at issue is now expressly decided adversely to the opinion in Ex parte Farley, supra, and that opinion not noticed in this opinion. If the Legislature can authorize the City of Dallas or any other city to make different rules and regulations and perscribe different punishments from those prescribed by the State law with reference to a pool table or pool hall, then it may do so in reference to any of those questions, and the ordinance can prohibit the use of these different matters authorized by the State law, then such ordinance can with the same authority authorize the use of them. The power would be the same whether it was exercised against the State law to prohibit as it would be to use the same whether it authorized the running of the pool hall on Sunday in the face of the State law or prohibited it. In Bells case, 32 Texas Crim. Rep., 308, Judge Simkins, writing the opinion of the court, laid down the same proposition with reference to bawdy houses and variety shows. The proposition was there again asserted that those matters involved in city ordinances must not be contrary to but in strict harmony with the State law. I do not care to quote from the opinion. Those who are interested in tracing the subject can read it for themselves.

I do not understand how this ordinance can be treated as a Sunday law with different punishments and different hours, and yet held to be independent of, outside and beyond the purview of the State law. The Legislature has enacted several statutes with reference to Sunday Laws, and in every instance, except the regulation of the liquor traffic in Fitzhugh-Robertson statute, the statute simply prohibited the violation of these matters on Sunday, and everywhere and under all circumstances, so far as I am aware, when the day Sunday is mentioned it means twenty-four hours, that is, from midnight Saturday night to midnight Sunday night. The Legislature authorizes pool halls and tables, and permits them to run under the authority granted them, and any attack by the city of any of these laws would necessarily be vicious. It does not make any difference whether it is a regulation or prohibition; if the State regulates the act, the city cannot authorize the act. If the State regulates the act, the the regulation by the ordinance must be in strict harmony with the regulation by the State law, and this by all the authorities in Texas. If the State levies a tax, the city is confined to levying one-half as the maximum. Under the Fitzhugh-Robertson law regulating the sale of intoxicating liquors the Legislature requires the closing of saloons

at 12 o'clock at night and prohibits the opening of them before 5 o'clock the following morning, just as this ordinance does with reference to pool halls. The same act further requires the saloon keeper to close his saloon on Saturday night at 12 'o'clock and prohibits it being opened before 5 o'clock the following Monday morning. This ordinance of the city does the same thing with reference to pool halls. So it seems when this ordinance was passed the city seemed to have looked to the authority of the liquor dealer laws as provided in the Act of the Legislature known as the Fitzhugh-Robertson law instead of the statutes in regard to Sunday laws. Pool halls are not saloons, at least they have not been so regarded to date. Saloons are not pool halls. We, therefore, cannot look to saloon laws for authority for closing pool halls so far as Sunday laws are concerned. We must look to the Act of the Legislature that defines and authorizes or prohibits pool tables and pool halls and not to saloon laws, and so far as this ordinance is concerned, there ought to be no contention here and no proposition ought to be asserted that pool halls, about which this ordinance was passed, are saloons or in any way connected incidentally or otherwise with saloon legislation. Perhaps I have written enough, and indeed more than ought to be necessary in view of the well settled and thoroughly adjudicated jurisprudence of Texas, and not only the jurisprudence of the State but the organic law and statutory enactments. If the pool hall law is deficient, and other regulations are necessary, the Legislature is empowered to supply deficiencies, but not this court nor the City of Dallas or any other city. If the Legislature should in their wisdom conclude that pool halls should close every night at 12 o'clock until 5 o'clock the next morning, and close at 12 o'clock Saturday night and not open again until Monday morning at 5 o'clock, they could enact such law. The Legislature has not so enacted. That is legislative and not a judicial matter, and until the Legislature does this the City of Dallas is powerless to do so in the face of our constitutional provisions and statutory enactments. That they have not done so is conceded by my brethren in their opinion, but they undertake to get away from this by stating that this is a regulation and not in conflict with the State law, but they have not cited an authority that sustains that proposition. The authorities they cite in which they say I dissented they, in their opinion, relegate to the doctrine of "reasonableness." The doctrine of "reasonableness" in regard to city ordinances has no application where the ordinance is in conflict with the State law, and it was never so held. Further, that question was not even raised nor suggested in this case.

I therefore cannot agree with my brethren in their opinion and regard it as more than dangerous, and if followed to its legitimate and probable results will overturn everything heretofore understood to be the law. I respectfully dissent.